UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DAVID J. BASCIO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:23-CV-21-ACL |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

### **MEMORANDUM**

Plaintiff David J. Bascio brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's partial denial of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, prior to May 27, 2022, Bascio was not disabled because he could perform jobs existing in significant numbers, but that he became disabled on that date when his age category changed.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I. Procedural History

Bascio filed his applications for benefits on December 3, 2020. (Tr. 75, 86.) He

claimed he became unable to work on June 18, 2020, due to heart attack, stroke, high blood pressure, triple bypass surgery, and diabetes.  (Tr. 245.)  Bascio was 52 years of age at his alleged onset of disability date.  (Tr. 28.)  His applications were denied initially.  (Tr. 75.)  On June 2, 2022, an ALJ issued a partially favorable decision.  (Tr. 14-31.)  On March 24, 2023, the Appeals Council denied Bascio's claim for review.  (Tr. 1-4.)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Bascio first argues that the ALJ erred in evaluating his symptoms, specifically his inability to concentrate following his stroke and coronary bypass surgery, "in that the ALJ has failed to make a specific finding as to whether or not Plaintiff's symptoms could reasonably be expected to be caused by the underlying medically determinable impairments of stroke and cardio bypass and thus has failed to comply with SSR 16-3p."  (Doc. 13 at p. 9.)  He next argues that the ALJ erred in "discounting Plaintiff's testimony that he could not work after June 17, 2020, because of mental confusion in that in making this finding the ALJ did not consider Plaintiff's excellent work record nor the statements of treating and examining medical personnel as required by *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)."  *Id.* at 13.

## II.   The ALJ's Determination

The ALJ first found that Bascio met the insured status requirements of the Social Security Act through June 30, 2025.  (Tr. 17.)  He stated that Bascio has not engaged in substantial gainful activity since his alleged onset date.  *Id.*  In addition, the ALJ concluded that Bascio had the following severe impairments: obesity, CVA (cerebrovascular accident), coronary artery disease with triple bypass, major depressive disorder, and generalized anxiety disorder.  *Id.* The ALJ found that Bascio did not have an impairment or combination of impairments that met

or medically equaled the severity of one of the listed impairments.  *Id.*

As to Bascio's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that since June 18, 2020, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds.  He can occasionally balance, stoop, kneel, crouch and crawl.  He must avoid concentrated exposure to extreme vibration and pulmonary irritations, such as dust, odors, fumes, gases and poorly ventilated areas.  He must avoid all exposure to unprotected heights.  He can understand, remember and carry out simple and routine instructions and tasks, but must not be required to follow fast-paced production quotas, such as assembly work.  He can learn, recall and use simple instructions and tasks that involve simple work-related decisions with few, if any, workplace changes or changes in routine.  His work is further limited to jobs working with the same types of things on a day-to-day basis, more so than people.  He can interact frequently with supervisors and occasionally with coworkers with no tandem tasks.

(Tr. 22.)

The ALJ found that Bascio has been unable to perform any past relevant work since his alleged onset of disability date.  (Tr. 28.)  He stated that, prior to May 27, 2022—the date Bascio's age category changed from "closely approaching advanced age" to "advanced age"— Bascio was capable of performing other jobs existing in significant numbers in the national economy.  (Tr. 29.)  The ALJ stated that beginning on May 27, 2022, there were no jobs that exist in significant numbers in the national economy that Bascio could perform.  (Tr. 30.)  The ALJ therefore concluded that Bascio was *not disabled prior to May 27, 2022*, but *became disabled on that date*, and his disability is expected to last twelve continuous months.  *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability

> insurance benefits protectively filed on December 3, 2020, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act beginning on May 27, 2022, and his disability is expected to last twelve continuous months.
>
> Based on the application for supplemental security income protectively filed on December 3, 2020, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on May 27, 2022, and his disability is expected to last twelve continuous months.
>
> The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the months for which payment will be made.

(Tr. 30-31.)

### III. Applicable Law

**III.A. Standard of Review**

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence

on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015)

(citation omitted).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary

to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is

responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id*.  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. § 416.920(a)(4)(v).  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.  The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.  *See* 20 C.F.R. §§ 404.1520a(b)(1),

416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.  Discussion

In both of Bascio's claims, he challenges the ALJ's assessment of his subjective complaints. Specifically, he contends that the ALJ erred in evaluating his complaints of inability to concentrate and mental confusion resulting from his stroke and coronary bypass surgery.

In considering the claimant's symptoms, the ALJ must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment—i.e., an impairment that can be shown by medically acceptable clinical or

laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.   20 C.F.R. 404 § 1529; SSR 16-3p.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations.  *Id*.

In the instant case, the ALJ accurately set forth the two-part test, but failed to make a finding regarding the first step: whether Bascio's impairments could reasonably be expected to produce the symptoms of inability to concentrate and confusion.   Instead, he included the following statement after setting forth his RFC determination: "[i]n making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p."   (Tr. 22.)

Bascio first argues that the ALJ's failure to make a specific finding violates the regulations and requires reversal.   Defendant concedes that the ALJ did not expressly state his finding at the first step but argues that the ALJ's decision demonstrates that he found Bascio's impairments could reasonably be expected to produce his alleged symptoms by proceeding to the second step.   Defendant argues that the ALJ's error is merely a deficiency in opinion-writing, which is not a sufficient reason for reversal where the deficiency had no effect on the outcome of the case.

The Court finds that the ALJ applied the appropriate two-step credibility standard and concluded, with sufficient specificity, that plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible.

The ALJ summarized Bascio's testimony regarding the subjective complaints at issue as follows:

> He has memory loss and vertigo.   He has not had any further testing and is supposed to see a neurologist.   He has had mini strokes since his major stroke in 2019.   He has been to the emergency department once or twice.   He has blanked out while driving and had to pull over to rest until it passed.   He does not drive long distances because of this.   He had an echocardiogram when he had a triple bypass and has not had any further cardiac workup.   He had to stop working because he was getting confused easily and had difficulty remembering things. He moved to be closer to family.   He has not worked since June 2020.   He can walk 50 to 60 yards and then has chest pain and shortness of breath.   He needs knee replacement surgery, and this causes pain with climbing steps.   If he is in a crowded store, he gets really confused about what he is looking for.   He starts a project and forgets what he is doing.   He has someone accompany him to the store because of this.

(Tr. 23-24.)

Although the ALJ did not specifically state that Bascio's symptoms of inability to concentrate and mental confusion could result from his medically determined impairments, it is clear that the ALJ made this determination because he noted that the impairments of stroke and coronary artery disease with triple bypass were "severe" and affected his functional capacity. After considering Bascio's statements as to the intensity, frequency, and limiting nature of his impairments, the ALJ found them to be not totally consistent with the evidence.

As an initial matter, Social Security Ruling 16-3p eliminated the word "credibility" from the analysis of subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence.   SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529. The Rule incorporates the familiar factors from *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) that previously guided an ALJ's analysis of subjective complaints, including: objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's

Page **11** of **16**

daily activities; (2) the duration, frequency and intensity of the symptoms (*i.e.*, pain); (3) precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions.  *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019).   If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's testimony, an ALJ may decline to credit a claimant's subjective complaints.  *Id.*

The ALJ acknowledged that the medical records "note ongoing complaints of lingering symptoms from his stroke, such as confusion, memory loss, dizziness and intermittent numbness and weakness" yet pointed out that "examination findings show he had a normal gait, normal muscle strength and tone, normal sensation and no significant neurological or cognitive deficits." (Tr. 27.)   The ALJ's statement that examinations findings were essentially normal is supported by the record.   (Tr. 328, 320, 333, 337, 649-50, 665, 673.)   In fact, at a March 2021 consultative internal examination, Shehryar Malik, DO, stated that he "could not find any residual deficits for his stroke."   (Tr. 650.)

The ALJ must consider the absence of objective medical evidence supporting a plaintiff's subjective complaints, although the ALJ may not discount a plaintiff's subjective complaints solely because they are unsupported by objective medical evidence.  *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) ("[A]n ALJ is entitled to make a factual determination that a [c]laimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary") (internal citation omitted).   *See also Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (ALJ properly considered unremarkable or mild objective findings as one factor in assessing subjective complaints.).   Here, the ALJ properly considered the lack of objective medical evidence supporting Bascio's complaints of disabling stroke symptoms.

The ALJ next considered Bascio's non-compliance with treatment recommendations. The record is replete with notations that Bascio failed to take his blood pressure medication. For example, on August 30, 2019, Bascio presented to Ryan Williams, M.D. with a history of "poorly controlled hypertension," and reported that he had not taken his blood pressure medications "for many months" because he had run out.  (Tr. 24, 334.)  Dr. Williams noted that Bascio's stroke was "in the setting of poorly controlled diabetes mellitus and hypertension." (Tr. 24, 338.)  His blood pressure measured high at 222/131 when he presented to the emergency room for knee pain on June 18, 2020, and Bascio reported he had not taken his blood pressure medication in three days.  (Tr. 25, 370.)  Bascio refused treatment for his high blood pressure even after he was told it was "stroke level blood pressure."  (Tr. 371.)  In January 2022, Bascio reported that he only occasionally checked his blood sugar at home and took his medication only once a week.  (Tr. 27, 668.)  Noncompliance with prescribed treatment is a valid reason to discredit a claimant's subjective allegations.  *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006); 20 C.F.R. § 404.1530(a–b) (failure to follow a prescribed course of treatment without good reason precludes a finding of disability).  Here, the ALJ stated that even though Bascio did not comply with treatment recommendations, the medical records still do not support his allegations of disabling symptoms.

The ALJ also noted that Bascio failed to seek treatment for his impairments from July 2020 to November 8, 2021, when he established care at Northeast Family Health for hypertension, diabetes, and obesity.  (Tr. 26, 662.)  At that time, he reported that he had not taken any medication for four months.  *Id.*  He complained of vertigo and being "spaced out" all the time, but examination findings were normal.  (Tr. 27, 662, 665.)  In February 2022,

Page **13** of **16**

Bascio reported that he did not wish to see a neurologist for complaints of occasional vertigo following his stroke.  (Tr. 27, 673.)

A claimant's "failure to seek treatment" is not dispositive, though it certainly "may indicate the relative seriousness of a medical problem." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995); *see also Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (finding conservative treatment weighs against credibility); *Vanlue v. Astrue*, 4:11-cv-595-TIA, 2012 WL 4464797, at *12 (E.D. Mo. Sept. 26, 2012) (finding minimal and conservative mental health treatment weigh against a finding of disability).

Most of the medical evidence in the record is either from consultative examinations ordered by the state agency, or emergency room visits for various acute impairments.  The ALJ acknowledged Bascio's statement that he had financial obstacles to obtaining treatment, but noted that there was no indication he attempted to obtain free or affordable healthcare.  (Tr. 28.) *See Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003) (plaintiff is not excused for failure to pursue treatment where there is no evidence plaintiff was ever denied treatment because of insufficient funds or insurance).

The ALJ also discussed Bascio's daily activities.  He stated that Bascio's reports and testimony "indicate a more active lifestyle than that of a sedentary level."  (Tr. 27.)  For example, Bascio testified that he babysits for his 14-month-old granddaughter Monday through Friday for up to four hours each day; drives short distances; does household chores; goes shopping; and is capable of managing his own affairs and finances.  (Tr. 27, 61-62, 65.) Although a claimant's ability to perform such activities "does not disprove disability as a matter of law," *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007), it was appropriate for the ALJ to consider such inconsistencies when evaluating Bascio's subjective complaints.  *See, e.g.,*

*McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (noting the claimant's ability to "perform some cooking, take care of his dogs, use a computer, drive with a neck brace, and shop for groceries with...an electric cart"); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2010) (stating "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain").

Bascio argues that the ALJ erred in failing to consider his "excellent work record." (Doc. 13 at 13.)   He contends that, because a claimant's work record is a *Polaski* factor, the ALJ's refusal to consider it constitutes reversible error.

The ALJ is not mechanically obligated to discuss each of the above factors, however, when rejecting a claimant's subjective complaints, the ALJ must make an express determination detailing his or her reasons for discrediting the testimony, and the ALJ's assessment must be based on substantial evidence.   *Vick v. Saul*, No. 1:19 CV 232 CDP, 2021 WL 663105, at *8 (E.D. Mo. Feb. 19, 2021) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Grba-Craghead v. Astrue*, 669 F. Supp. 2d 991, 1008 (E.D. Mo. 2009)).   On review by the court, "[c]redibility determinations are the province of the ALJ."   *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)).   The court defers to the ALJ's determinations "as long as good reasons and substantial evidence support the ALJ's evaluation of credibility."   *Id.*

Here, the ALJ's failure to acknowledge Bascio's positive prior work history was not reversible error.   The ALJ was not required to explicitly discuss each factor.   The ALJ's written opinion reveals a thorough review of the record and proper evaluation of Bascio's subjective complaints.   The ALJ found that Bascio's complaints were not entirely consistent with the medical and other evidence in the record.   Notably, despite his complaints of disabling mental

confusion following his stroke, physical examinations were largely normal, Dr. Malik "could not find any residual deficits for his stroke" (Tr. 650), Bascio failed to seek regular treatment, and Bascio remained capable of caring for his 14-month-old granddaughter Monday through Friday for up to four hours each day.   The ALJ nonetheless considered Bascio's complaints regarding mental confusion in limiting him to a restricted range of simple work.  (Tr. 22.)   In sum, the ALJ identified good reasons for discounting the complaints, and his determination is supported by substantial evidence on the record as a whole.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of September, 2024.